UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.                                                                    Case No. 18-CR-80166-DMM

NICHALOS R. WUKOSON
_____/

**NOTICE OF INTENT TO INTRODUCE OTHER ACTS EVIDENCE PUSUANT TO F.R.E. 404(B) AND AS INTRINSIC EVIDENCE**

COMES NOW the United States, by and through the undersigned Assistant United States Attorney, and hereby files this notice of intent to introduce other acts evidence under Federal Rule of Evidence 404(b) and as intrinsic evidence and states the following in support thereof. The United States seeks to introduce at trial, evidence of uncharged conduct committed by the defendant, NICHALOS R. WUKOSON ("WUKOSON" or "the defendant"), namely, 1) data, images and videos from the black HP and silver HP laptops evidencing child pornography from 2014 through December 4, 2017; and 2) logs, images and videos from the undercover downloads and attempts to download child pornography from the defendant's computer, all of which shall be offered to prove WUKOSON had the motive, intent, plan, knowledge, and lack of mistake, to commit the offenses charged in the Indictment presently before the Court. Concurrently or alternatively, all of the items listed above and further detailed below are intrinsic evidence of the charged criminal acts and thus independently admissible.

**FACTUAL SUMMARY**

The evidence adduced at trial will show that between June and November of 2017, an undercover FBI Task Force Officer (TFO) attempted to downloaded and downloaded hundreds of images and videos depicting the sexual abuse of minors, over the course of twenty-three (23)

different days. The child pornography that was downloaded was done so directly from a host computer using an IP (internet protocol) address through the Bit Torrent peer-to-peer network ("Bit Torrent"), that resolved to WUKOSON's residence in Jupiter, Florida. Nine (9) of these child pornography videos are the subject of counts 3-6 of the Superseding indictment. On December 4, 2017, the FBI executed a search warrant at the defendant's residence. A silver HP laptop was discovered in WUKOSON's bedroom, along with an iPhone and iPad. Preliminarily, during the execution of the search warrant, a forensic review of the silver HP laptop did not reveal child pornography on the device and further examination was needed. WUKOSON's iPhone was imaged, and returned to him, as he indicated it was for work. The same was true with WUKOSON's iPad. The two phones found in kitchen were seized. One, a Galaxy S6, WUKOSON identified as his own; it was seized and examined at the FBI office. The second, a Galaxy S7, WUKOSON identified as belonging to his 13-year-old son, who had left the residence to go to school during the execution of the search warrant.[1] In a post *Miranda* interview, the defendant denied, among other things, that (i) he had familiarity with Bit Torrent; and (ii) he had been downloading child pornography or pornography of any kind. Additionally, when shown a second computer (a black HP laptop) that was found in a closet of the residence, the defendant initially denied ownership but then subsequently admitted it was his own. That computer was seized and later examined as well.[2]

Forensic examination of the black HP laptop and the silver HP laptop has resulted in the

---

[1] The 13-year-old son left the residence with his iPhone. This device was not imaged or examined by the FBI, as the 13-year-old was not a person of interest in this investigation, which surrounded the Bit Torrent network and to the agent's knowledge on scene, would only be accessible via a computer.

[2] The government will present evidence that the black HP laptop could not be images or examined. An FBI computer scientist was able to repair the hard drive, image or copy the device, and submit to the FBI forensic examiner for extraction and analysis.

discovery of thousands of images and videos of child pornography, as well as evidence of deleted files with titles of and searches for child pornography. Because much of this information had been deleted, the evidence was not available on scene to the forensic examiner. Through defense counsel, the defendant made the government aware that he will likely assert at trial that his now, 14-year-old son, who was between 10 and 12 years old during the charged periods of child pornography, was responsible for accessing, downloading, and viewing the child pornography discovered on the two computers.

### THE "OTHER" EVIDENCE

At trial, the United States intends to offer testimony of FBI Cart Examiner Brian O'Neil regarding the forensic examination of WUKOSON's black and silver HP laptops. That examination revealed previous use of the Bit Torrent file-sharing program on these computers. That examination in many instances coincides with more than twenty dates that law enforcement attempted to downloaded or did download child pornography from the defendant's computer as well as within the range of dates charged in Counts 1 and 2, including the following: log files; shellbags; LNK files; Internet Explorer history, main history and content; prefetch files; torrent active transfer files; and search queries. Further, in accessing the defendant's two computers in a virtual scenario, screen shots of the defendant's computer will be offered to provide a visual showing of how the defendant accessed child pornography on the computer. Data from the defendant's two (2) mobile phones, an iPhone 6s and Samsung Galaxy S6 also provide relevant data to the location of the defendant and others during and around the days that law enforcement attempted to download or did download child pornography from the defendant's computer.

At trial, the United States intends to offer testimony of law enforcement officers regarding the investigation of defendant that led to the execution of the search warrant at his residence on

December 4, 2017. The testimony of FBI Special Agent Dan Alfin will explain the downloading of child pornography that defendant made available for distribution from his (defendant's) computer during the investigation.[3] Specifically, SA Alfin, will testify that during the investigation of this case, on dates from June 2017 through November 2017, using a law enforcement computer, the FBI was able to connect to a host computer, later connected to defendant's residence, and download hundreds of viewable images and videos of child pornography, including those charged in counts three through six in the superseding indictment. Only portions of the nine (9) charged videos will be offered into evidence, but SA Alfin will testify that all of the downloaded images and videos either child pornography or child erotica.

The Government now seeks to admit, pursuant to Rule 404(b), this evidence to show WUKOSON's motive, intent, plan, knowledge, and lack of mistake to possess child pornography. Moreover, such testimony is admissible, as evidence tending to show "the chain of events explaining the context, motive and set-up of the crime, is properly admitted if ... [it] forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *United States v. McLean*, 138 F.3d 1398, 1043 (11th Cir. 1998) (citing *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985)).

## Memorandum of Law

### A.    The Evidence is Admissible Under Rule 404(b)

Federal Rule of Evidence 404(b) excludes the admission of "other crimes, wrongs, or acts" (i.e., uncharged bad acts) to prove action in conformity therewith but allows for their admission as proof of "motive, opportunity, intent, preparation, plan knowledge, identity, or absence of mistake

---

[3] The undersigned Assistant United States Attorney emailed both counsel of record for the defendant the CV and 16(a)(1)(G) notice for SA Alfin concerning the matters for which he will be testifying.

4

or accident." Fed. R. Evid. 404(b). *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (citations omitted). To be admissible under Rule 404(b), evidence of other acts, crimes or wrongs, must satisfy the requirements set forth in *United States v. Huddleston,* 485 U.S. 683 (1988). In determining the admissibility of prior act evidence, the Court should first decide if the evidence is offered for a proper purpose – "one other than to prove the defendant's bad character or criminal propensity." *Id.* at 683. Second, the Court should decide whether the evidence is relevant to some disputed issue in the trial. *Id*. Third, the court should assess whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice its admission would create. *Id*. *See also United States v. Jennings & Jennings*, 280 Fed.Appx. 836, 841 (11th Cir. 2008); *Edouard*, 485 F.3d at 1344.

Finally, if requested to do so, the court should give an appropriate limiting instruction. *Huddleston,* 485 U.S. at 683. Before admitting evidence pursuant to Rule 404(b), the Court need not hold a Rule 104(a) evidentiary hearing, but instead must only make a preliminary finding that the evidence is not being admitted solely to prove character and a jury could reasonably conclude that "the act occurred and that the defendant was the actor." *Id.* at 689 (stating that a preliminary finding by a preponderance of the evidence is not required).

The Eleventh Circuit has likewise held that, "[f]ederal Rule of Evidence 404(b) is a rule of inclusion, and . . . accordingly 404(b) evidence, like other relevant evidence, should not be excluded when it is central to the prosecution's case." *United States v. Eckhardt*, 466 F.3d 938, 946 (11th Cir. 2006) (quoting *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003) (internal citations and quotations omitted)).

The evidence of the past, deliberate entry of key-word Internet searches using terms that nearly mirror his sexual abuse against the victim, and the fact that these searches were conducted

5

on the computers at or around the time the images were produced and possessed – is relevant because it tends to refute any claim by Defendant that he did not intend to possess the images and videos of the victim. Put another way, this evidence tends to prove that when the Defendant conducted key-word Internet searches for child pornography, he did so intentionally, knowing or at least hoping he would find child pornography. Accordingly, this "other crimes, wrongs or acts" evidence should deemed admissible under Rule 404(b). The same is true for the log files; shellbags; LNK files; Internet Explorer history, main history and content; prefetch files; torrent active transfer files, as well as the timeline and associated data from the defendant's Galaxy S6 cellphone and iPhone 6S.[4] This data is generated by the computer and the Bit Torrent program during usage of the same by the user, which in this case, is the defendant, specifically when his son was not present.

In the instant case, the defendant or his counsel may assert that he did not knowingly and intentionally possess the child pornography. Or perhaps the Defendant will claim that someone else used his devices to download and possess the images and videos of child pornography. Each of these claims is contradicted by the other acts evidence the government will seek to admit at trial. Because that evidence is being offered for a proper purpose—to show Defendant's knowledge, intent, identity, and lack of mistake or accident—it is relevant to the crimes for which he is charged and should be deemed admissible at trial under Rule 404(b). Moreover, as the Eleventh Circuit has explained, when a defendant pleads not guilty and elects to go to trial, as WUKOSON has, he places these considerations at issue. *Edouard*, 485 F.3d at 1545 (*quoting*, *United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998)) ("A defendant who enters a not guilty plea makes intent a

---

[4] All of this material was made available to the defendant in discovery when the government turned over one-hundred fifty-five (155) .CSV files extracted out of the two computers, the logical extraction from the defendant's Galaxy S6 phone and the physical extraction from the defendant's iPhone 6s.

material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue.").

Proof of the defendant's prurient sexual interest in children, as evidenced by the images of child pornography (most of which was deleted), data as indicated above, and the search terms, clearly forms an integral part of the story of this case.  *See McLean, 138 F.3d at 1403*.

### C. The Evidence is Admissible as Intrinsic Evidence

The Eleventh Circuit Court of Appeals has held that "intrinsic evidence is admissible if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense."  *United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013) (internal quotation marks omitted). Stated another way:

> Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

*United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985). Such evidence is not extrinsic evidence and thus no 404(b) analysis is needed.  *Id*.  An act can be intrinsic evidence, or *res gestae*, regardless of whether the act occurred during or outside of the charged time period. *United States v. Tunsil*, 672 F.2d 879, 880–81 (11th Cir. 1982).

Admitting the data and logs listed above, as well as the images and videos not charged in the indictment is appropriate and not more prejudicial than probative as well, given the length of the time the Defendant is charged with possessing child pornography.  During the trial, it is expected that SA Alfin with testify, among other things, that the FBI was able to connect to a host computer, later attributed to the defendant, and downloaded hundreds of images and videos of

7

child pornography, including the nine (9) charged in Counts 3-6 of the Superseding Indictment. SA Alfin will testify that all of the remaining videos being distributed by defendant were child-pornographic or erotic in nature, and a document listing these the dates and times of those files, is "inextricably intertwined" with the facts of the case. *See United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985). The government will move to admit a hard drive that contains the download logs and child pornography and erotica that was downloaded, thus allowing SA Alfin to testify from that material. Again, this is the evidence of WUKOSON's crimes in this case. The evidence of the file titles of other videos being shared by defendant around the same time as the nine (9) charged videos and within the time period charged in Count 2, is "inextricably intertwined" with the rest of the United States' case because it "tend[ed] to corroborate, explain, or provide necessary context for evidence regarding the charged offense[s]" of distribution of child pornography. *Cowan v. United States*, No. 3:14-cv-370-J-32MCR, 2017 WL 1386804, at *12 (M.D. Fla. Apr. 18, 2017) (citing *United States v. Bush*, 673 Fed.App'x 947, 950 (11th Cir. 2016) (citation omitted)).

Testimony that the defendant's collection involved more child pornography than just the nine (9) charged videos in counts 3-6, and any videos and images the government will show to prove Counts 1 and 2, is properly admitted as lay opinion under Fed. R. Evid. 701. Such opinion testimony is admissible so long as it is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the testimony or to determining a fact at issue; and (c) not based on knowledge with the scope of Fed. R. Evid. 702. *See* Fed. R. Evid. 701. A law enforcement officer witness's conclusion that images are child pornographic in nature does not require qualification as an expert and is admissible subject to Rule 701 requirements. *United States v. Cowan*, 2012 WL 5834582, at *2 (11th Cir. Nov. 19, 2012), *cert. denied*, 569 U.S. 937 (2013) (citing *United States*

8

*v. Smith*, 459 F.3d 1276, 1297 n. 18 (11th Cir. 2006)).

If the Court should determine, however, that such evidence is extrinsic, it is still admissible, under Rule 404(b) as noted above, and relevant to show his motive, knowledge, intent, lack of mistake, and *modus operandi* for intending to engage in sexual activity with a child. *United States v. Gomez*, 927 F.2d 1530 (11th Cir. 1991). In *Gomez*, the Court held that a prior act similar to the charged conduct was admissible to rebut the defendant's claim that his gun possession was for an innocent purpose. *Id*. at 1534.

### B.     The Evidence is Admissible Under Rule 403

Just as in determining the admissibility of all evidence, a balancing test is applied pursuant to Federal Rule of Evidence 403 to determine whether the probative value of other acts evidence is substantially outweighed by the danger of unfair prejudice to the party opposing its admission. *Huddleston v. United States*, 485 U.S. 681, 688 (1988). The Supreme Court recognized in *Huddleston* that, "[e]xtrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." 485 U.S. at 685. Further, the prejudicial effect of the other acts evidence in the instant case is negligible at best given the actual produced child pornography images and videos. Moreover, any undue prejudice can be cured by an instruction from the Court on the proper consideration of Rule 404(b) evidence at and after its admission. *See Jernigan*, 341 F.3d at 1282 (trial court's limiting instructions mitigated potential prejudice); *see also United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1225 (11th Cir. 1993) (concluding that any prejudice could be mitigated by limiting instructions); *see* Criminal Pattern Trial Jury Instruction 1.1). Here, that includes all of the evidence listed above, but in addition, the playing and producing of child pornography images and videos to the jury.

Further, Rule 403, Federal Rules of Evidence, permits the exclusion of relevant evidence if its "probative value is substantially outweighed by a danger of … unfair prejudice." Fed. R. Evid. 403. It is important to point out that *unfair* prejudice is what Rule 403 is meant to guard against, that is, prejudice based on something other than the evidence's own persuasive weight. The term "unfair prejudice" refers to the "capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). In *Old Chief*, the Supreme Court explained that it is "unquestionably true as a general matter," that "the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly that a criminal defendant may not stipulate or admit his way out of the full evidential force of the case as the Government chooses to present it." *Id.* at 186-87. Evidence should not be excluded merely because it might be graphic or disturbing. *United States v. Kapp*, 419 F.3d 666, 667 (7th Cir. 2005); *see also United States v. Morales-Aldahondo*, 524 F.3d 115, 119-20 (1st Cir. 2008) (in child pornography case, "the court is not required to scrub the trial clean of all evidence that may have an emotional impact, where the evidence is part of the government's narrative.") (internal quotations omitted). The Eleventh Circuit has cautioned that Rule 403

> is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility. We have also said that in reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial effect.

*United States v. Alfaro-Moncado*, 607 F.3d 720, 734 (11th Cir. 2010) (citation and quotations omitted).

In a prosecution for possession child pornography, there is nothing unfair or unduly prejudicial about admitting and publishing to the jury the images and videos of child pornography

10

identified, or not, in the superseding indictment that defendant possessed, as his own conduct involving that material make up the very acts for which the jury will be asked to hold him accountable. While jurors may be repulsed by child pornography, they should be allowed to see the materials upon which the charges are explicitly based. Counts 1 and 2 charge child pornography from a device and do not list a specific image or video, and thus the government will select small portions of several videos or images to display to the jury. Where a defendant is "being prosecuted for exactly what [the evidence] depicts," the Court should steadfastly reject Rule 403 challenges. *See United States v. Hanna*, 630 F.3d 505, 512 (7th Cir. 2010) (citations omitted). This is precisely the case before this Court.

Appellate courts, including the Eleventh Circuit, have repeatedly and nearly uniformly ruled that publication of child pornography images or videos selected by the government was not unduly prejudicial, notwithstanding a defendant's offer to stipulate to their content. *See United States v. Bilus*, 626 F. App'x 856, 869 (11th Cir. 2015) (court held that admission publication of 11 images and two 5-second video clips depicting child pornography did not cause unfair prejudice and that any prejudice that may have resulted from publication of these materials was outweighed by their probative value to the prosecution's case); *United States v. Cray*, 450 F. App'x 923, 934-35 (11th Cir. 2012) (affirming conviction where jury was shown, over defendant's objection, videos of child pornography); *United States v. Ballard*, 448 F. App'x 987, 988-89 (11th Cir. 2011) (affirming conviction where jury was shown, over defendant's objection, 15 images and three videos of child pornography, despite defendant's stipulation that all admitted evidence constituted child pornography); *United States v. Miller*, 416 F. App'x 885, 888-90 (11th Cir. 2011) (affirming conviction where jury was shown 11 out of 100 total images, despite defendant's offer to stipulate that they depicted child pornography); *United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th

Cir. 2010) (affirming conviction where jury was shown, over defendant's objection, five child pornography images despite defendant's stipulation that charged materials contained child pornography); *United States v. Dodds*, 347 F.3d 893, 897-99 (11th Cir. 2003) (affirming conviction in which jury was shown, over defendant's objection that the evidence was cumulative and unduly prejudicial, 66 images of child pornography); *United States v. Mellies*, 329 F. App'x 592, 600-01 (6th Cir. 2009) (admission of 1,600 images, out of 11,000 in defendant's collection, was not improper despite defendant's admission that the images portrayed child pornography); *United States v. Sewell*, 457 F.3d 841, 844 (8th Cir. 2006) (in interlocutory appeal, court held that the district court "abused its discretion in refusing to allow the Government to publish a representative sample of the [child pornography] images" found on defendant's computer).

The defendant may claim that the videos and images are "inflammatory," implying that upon seeing the child pornography, the jury would automatically convict him regardless of whether the rest of the evidence proves that he committed the crimes. Such an argument might have *some* minimal sway if the evidence at issue was somehow collateral to the charged offenses, but it makes no sense here. In this case, *the videos and images are the crimes*, and presumably the defense is "somebody else" made them available for distribution. If the jury accepted this defense, why would it conclude that, even though defendant did not distribute the videos, he is nonetheless a bad person deserving of punishment through a guilty verdict? This argument would be based on flawed logic and should be rejected by this Court.

At trial, the United States should be permitted to admit and publish portions of the nine (9) videos charged in the indictment from Counts 3-6, as well as portions of several other videos that make up the basis of Counts 1 and 2, as well as other videos downloaded from the defendant. These excerpts constitute a mere fraction of defendant's total collection available for distribution

and which he possessed, which numbered in the hundreds of videos and images. This evidence is not extrinsic; rather, it is the crux of defendant's charged crimes. With the Court's permission, brief clips of each of the videos and several of the images will be displayed. Of course, the Court may preface this publication with an appropriate cautionary instruction. *See United States v. Baker*, 2015 WL 7068145 (MD Fla 2015) Case No. 3:13-cr-197-J-32JBT, Doc. 114 at 16. This proposed plan to present this important evidence is reasonable, measured, and could never be characterized as gratuitous.

Publishing a measured portion of the defendant's collection not only conforms with Eleventh Circuit precedent, it ensures that each of the jurors is exposed to and considers all of the evidence. If the videos are merely sent back to the jury room on disks in envelopes without publishing them in court, there is a strong possibility that some, or all, of the jurors will opt not to look at the videos at all. Even if a lone juror takes seriously, the Court's command to "consider all of the evidence," and wishes to view the evidence to fulfill his duty that he swore under oath to undertake, negative peer pressure and the fear of the social stigma and being labeled a "pervert" by the other jurors may prevent him from doing so. Furthermore, if one or two jurors look at the videos and images during deliberation but the others do not, will that not mean that the jurors who look are privy to evidence that the others have not seen? Will that force the others to look also, or will they decline to do so thereby refusing to follow the Court's instruction to "consider all of the evidence?"[5] Alternatively, will the ones who view the evidence have leverage and sway over the others because they are the only jurors to have actually seen all of the evidence? Publishing the evidence in court avoids all of these problems by ensuring that *every juror* views a brief sample

---

[5] *See* Eleventh Circuit Pattern Jury Instructions, Basic Instruction B5 (2016) ("When I say *you must consider all the evidence*, I don't mean that you must accept all the evidence as true or accurate") (emphasis added); *see also United States v. Carr*, MDFL Case. No. 3:16-cr-118-J-39JBT, Doc. 70 at 4, 5.

of each charged video.

Seeing the evidence for themselves enables the jurors to make a direct connection that cannot be duplicated or substituted by mere testimony or written stipulation, and the importance of which cannot be overstated. This connection to the evidence will eliminate the possibility of any "doubting Thomas" jurors who might have a preconceived and incorrect understanding of what constitutes child pornography, and will provide the United States the fair opportunity to carry its high burden of proof. As the Supreme Court remarked in *Old Chief*, "[a] syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it." 519 U.S. at 189. Eleventh Circuit precedent, as well as that of the majority of other circuits, supports the admission and the *publication* of images of child pornography to the jury, even when the parties enter into a stipulation. *Morales-Aldahondo*, 524 F.3d 115, 119-20 (affirming conviction where jury was shown, over defendant's objection, portion of defendant's collection despite his offer to stipulate that all images and videos met the legal definition of child pornography). It is well established that the United States is entitled to prove its case free from a defendant's preference to stipulate the evidence away. *Old Chief*, 519 U.S. at 189.

Potential impact of the evidence on the jurors is properly addressed and minimized in jury selection by ensuring that the prospective jurors are aware of the nature of the charges and that they can be fair and impartial. This Court may advise the potential jurors (individually and in private) about the graphic nature of the visual materials and whether they can still be impartial upon seeing them. Panel members who respond in the negative are stricken and removed for cause. The defense then has the opportunity to strike up to 10 more potential jurors about whom he may have additional concerns. The result is that, after the jurors are vetted and empaneled, there is a strong presumption that they are the kind of jurors that are not so overly sensitive to the

content of the case that they cannot fairly consider the evidence. Rather, they have been selected precisely because they were the most likely to discharge their civic duty without bias or prejudice for and against the United States or defendant. By declaring that they can be impartial, they have all functionally agreed to view all the evidence. The selection process, and our entire judicial system, demands that these jurors be taken at their word. The proper manner for the Court to deal with the contraband evidence is to forewarn them during *voir dire* so that they are mentally prepared, thus not hobbling the prosecution by barring the United States from showing the jurors the best evidence of defendant's charged offenses. The Court may properly give the jury a mid-trial cautionary instruction immediately prior to the images being published during the trial, as well as a similar instruction after the evidence has closed and before the jury begins its deliberations. *See Baker*, Doc. 114 at 16.

In accordance with controlling Supreme Court (*Old Chief*) and Eleventh Circuit precedent, the applicable Eleventh Circuit pattern jury instructions, and in the interest of justice and fairness, the United States respectfully requests that this Court permit the admission of the nine (9) videos charged in Counts 3-6 of the Superseding Indictment, as well as several other videos and images recovered from the defendant's computers and the undercover downloads, and allow publication of short excerpts of them to the jury.

## Conclusion

For all these reasons, the United Court requests this court to grant the admission of the government's evidence pursuant to F.R.E. 404(b) or that it is intrinsic evidence to the charged crimes that that the evidence is admissible in whole and the government be allowed to play the desired portions of the images and videos.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES

I hereby certify that I have communicated the instant notice with Attorney Michael Cohen via telephone he objects to this motion.

                Respectfully submitted,

                ARIANA FAJARDO ORSHAN
                UNITED STATES ATTORNEY

By: *s/ Gregory Schiller*
     Assistant United States Attorney
     FL Bar #: 0648477
     500 S. Australian Avenue, Suite 400
     West Palm Beach, Florida 33401
     Tel: (561) 209-1045
     Gregory.schiller@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2019 I electronically filed the foregoing with the Clerk of the Court.

*s/ Gregory Schiller*
Assistant United States Attorney