UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-80166-CR-MIDDLEBROOKS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| NICHALOS WUKOSON, | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS**

The United States respectfully opposes defendant NICHALOS WUKOSON's Motion to

Suppress Evidence (DE 55).   The motion should be denied.   No evidentiary hearing is required.

**I.      Introduction**

The government opposes NICHALOS WUKOSON's (hereinafter "the defendant" or

WUKOSON) motion to suppress.   There was probable cause for the issuance of the search

warrant at 807 University Boulevard, Apartment #104, Jupiter, FL 33458 (hereinafter "the

residence"), as Federal Bureau of Investigation (FBI) Special Agent Scott Wilson (SA Wilson),

who applied for the search warrant, did not make any deliberately or recklessly false or misleading

statements or omissions.   The court can make that conclusion from reviewing the affidavit.   A

hearing is unnecessary to that determination.   Further, SA Wilson acted in good faith, so there

would be no need to suppress evidence obtained during execution of the warrant even if the court

were to conclude, that the warrant had not properly been issued.

The government received the electronically filed motion to suppress at 4:28pm on

Wednesday, March 14, 2019.   That same evening, at approximately 10:30pm, the undersigned

spoke on the telephone with defense counsel Michael Cohen for clarification of the issues broached in the motion to suppress.   Mr. Cohen expressed that there are grounds for the motion to suppress that are in fact both "*Franks*" issues: 1) the government misled the Federal Magistrate Judge in the affidavit saying that the FBI "successfully completed the download" of three child pornography videos; and 2) that because those same videos were identified on the older black computer, and not on the newer silver computer, that this invalidates the government's probable cause.

## II.     Factual Summary

As the affidavit for search warrant states, on September 25, 2017, an FBI special agent, while working in an undercover capacity, utilized a Bit Torrent law enforcement network client program to acquire downloads of child pornography from the IP address that would later resolve to the defendant.   DE 55:23.

The BitTorrent network can be accessed by peer/client computers via many different BitTorrent network client (software) programs, including, for example, BitTorrent and uTorrent, among others.   These client programs are publically available and typically free P2P client software programs that can be downloaded from the Internet.   DE 55:17-22.

A person interested in obtaining child pornographic images or videos on the BitTorrent network can go to a torrent indexing website and conduct a keyword search using a term such as "preteen sex" or "pthc" (pre-teen hardcore).   The results of the keyword search are typically returned to the user's computer by displaying them on the torrent-indexing website.   Based on the results of the keyword search, the user would then select a "Torrent" of interest to download to their computer from the website.   Typically, the BitTorrent client program will then process the "Torrent" file.   Utilizing trackers and other BitTorrent network protocols, peers/clients are

located that have recently reported having the files or parts of the files referenced in the "Torrent" file, available for sharing.   Typically, once the BitTorrent network client has downloaded part of files, it may immediately begin sharing the part of the file or files it has with other users on the network.   The downloaded files are then stored in a folder previously designated by the user and/or the client program on the user's computer or designated external storage media.   The downloaded files, including the torrent file, will remain in that location until moved or deleted by the user.   DE 55:17-22.

The affidavit, in great detail, then goes on to explain how the FBI are able to identify an IP address sharing child pornography on the Bit Torrent network and attempt direct downloads from a suspect computer:

> Law Enforcement can search the BitTorrent network in order to locate individuals sharing previously identified child exploitation material in the same way a user searches this network.   To search the network for these known torrents can quickly identify targets in their jurisdiction.   Law Enforcement receives this information from "Trackers" about peers/clients on the BitTorrent network recently reporting that they are involved in sharing digital files of known or suspected child pornography, based on "info hash" SHA-1 hash values of torrents.   These torrents being searched for are those that have been previously identified by law enforcement as being associated with such files.   There are BitTorrent network client programs which allow for single-source downloads from a computer at a single IP address, meaning that an entire file or files are downloaded only from a computer at a single IP address as opposed to obtaining the file from multiple peers/clients on the BitTorrent network.   This procedure allows for the detection and investigation of those computers involved in sharing digital files of known or suspected child pornography on the BitTorrent network.

> During the query and/or downloading process from a suspect BitTorrent network client, certain information may be exchanged between the investigator's BitTorrent client program and the suspect client program they are querying and/or downloading a file from.   This information includes 1) the suspect client's IP address; 2) a confirmation from the suspect client that they have pieces of the file(s) being requested, in whole or in part, and that the pieces of the file(s) is being reported as shared from the suspect client program; and 3) the BitTorrent network

client program and version being utilized by the suspect computer, all of which information has the ability to be logged by law enforcement.

DE 55:21-22.

Specifically, in this case IP address 75.74.212.126 utilized Bit Torrent and shared files with hash values of images and videos of child pornography.   This IP address had been associated with files of interest by investigators searching for previously identified torrents, over the Bit Torrent network, for files related to known child pornography images/videos.   On September 25, 2017, law enforcement successfully completed the download of "several" video files depicting child pornography that a computer at IP address 75.74.212.126 was making available.   DE 55:23.

Those files identified and described in the search warrant affidavit were:

1. (Pthc) 10yo Irisa - Anal .mpg.   SA Wilson included the following description after having reviewed the downloaded video: "This video depicts a prepubescent female on all four's with what appears to be the hands of an adult male touching the girl's anus and vagina with an unknown object. The video transitions to what appears to be the same prepubescent girl laying naked on a bed playing with and fondling her vagina, with the camera zooming in on her vaginal area. The third portion of the video shows an adult male penetrating a prepubescent girl with his penis while the girl is on all fours and then while the adult male is laying down."

2. (Pthc) Lily 10Yo Takes It Fully - 8m39S.avi.   SA Wilson included the following description after having reviewed the downloaded video: "This video depicts an adult male digitally and orally penetrating a prepubescent female's vagina and then the adult male has vaginal sex with the juvenile female."

3. Russian Lolita 13 yo- SaMix (PTHC)(R@y gold).mpg.   SA Wilson included the following description after having reviewed the downloaded video: "This video is a compilation that depicts a kneeling juvenile female manually stimulating a standing adult male; a prepubescent female performing oral and digital sex on an adult male; a prepubescent female and an adult male laying on a bed having vaginal sex; an adult male digitally and orally penetrating a prepubescent female's vagina and then the adult male has vaginal sex with the juvenile female; a prepubescent female sitting naked on top of a naked adult male while manually stimulating his erect penis."

Comcast provided that for the dates the files were downloaded the IP address was assigned to an account registered to WUKOSON at 807 University Boulevard, Apartment 104, Jupiter, Florida, 33458.   Surveillance confirmed this was WUKOSON's residence.   DE 55:24.

On November 30, 2017, SA Wilson obtained the search warrant for 807 University Boulevard, Apartment 104, Jupiter, Florida, 33458 from a West Palm Beach Federal Magistrate Judge (DE 55:10-41).   Upon executing the same on December 4, 2017, they encountered WUKOSON and his 12-year-old son.

A forensic review of the new silver HP laptop and the old black HP laptop revealed both had been used to access the Bit Torrent network.   Child pornography in the recycling bin and Bit Torrent logs were recovered from both computers.

Further, law enforcement had downloaded and attempted to download child pornography from WUKOSON's IP address on more than twenty other dates from June 2017 through November 2017.   For the sake of brevity in the affidavit, however, only one date was selected.

III.    **Standard of Review for Suppression Motions**

If evidence was seized pursuant to a search warrant, the defendant bears the burden of proving that the evidence in question was seized in violation of his Fourth Amendment rights. *See United States v. Bachner*, 706 F.2d 1121, 1125 (11th Cir. 1983).   Evidentiary hearings on motions to suppress are not granted as a matter of course, but are held only when the defendant alleges sufficient facts, which if proven, would justify relief.   *United States v. Harrelson*, 705 F.2d 733, 737-38 (5th Cir. 1983).   Factual allegations set forth in a defendant's motion must be "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." *Harrelson,* 705 F.2d at 737).   The determination of whether a

hearing is required on a motion to suppress is necessarily dependent upon the particular facts, which attend a particular request, and the district court is properly left with a certain amount of discretion in this regard. *Id.*

## IV. Franks v. Delaware

WUKOSON alleges, "the affiant made a knowing and intentional false statement in the affidavit or a statement in reckless disregard of the truth, without which the Government cannot demonstrate probable cause for this search." DE 55:6. WUKOSON maintains that the government improperly falsified facts from its warrant application, in violation of *Franks v. Delaware*, 438 U.S. 154 (1978). WUKOSON is not entitled to relief, or even a *Franks* hearing, because he has not alleged and offered to prove that the government acted with intent to mislead the Federal Magistrate Judge, nor that the affidavit would have lacked probable cause if the omitted facts had been included.

Based upon the government's reading of the motion to suppress and a telephonic clarification with Attorney Michael Cohen, it is the government's understanding that WUKOSON asserts two misstatements by law enforcement, in the search warrant affidavit, that would invalid the search warrant under *Franks*. The search warrant affidavit says that "[o]n September 25, 2017 law enforcement successfully completed the download of [three] video files depicting child pornography..." DE 55:2. WUKOSON alleges that because the government only downloaded one of the three files in their entirety (the other two having less than 20% of the file downloaded) that the government made a false statement causing a lack of probable cause. DE 55:4. He further alleges that because those particular files were identified on the older black computer, and not on the newer silver computer, that this invalidates the government's probable cause. *Id.*

In *Franks*, the Supreme Court set forth a "rule…[of] limited scope, both in regard to when exclusion of the seized evidence is mandated, and when a hearing on allegations of misstatements must be accorded." *Id*. at 167.   To be entitled to an evidentiary hearing, the defendant must allege, first, that the affidavit contained "deliberate falsehood or reckless disregard for the truth..." *Id*. at 171; *accord id*. at 155.   Negligence or an innocent mistake will not justify suppression. *Id*. at 172.   Second, he must allege that the false statement is "necessary to the finding of probable cause..." *Id*. at 156; *accord id*. at171-72 (defendant not entitled to hearing "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause").   The Court emphasized that the defendant's allegations "must be more than conclusory" and "must be accompanied by an offer of proof." *Id*. at 171-72; *Campbell*, 193 F. App'x at 924.   WUKOSON has not made either of the required showings.

First, *Franks* requires a showing of deliberate or reckless falsehood.   SA Wilson did not mislead court.   The undercover FBI agent did successfully obtain and complete downloads of child pornography.   WUKOSON does not suggest that the downloaded videos were anything other than child pornography.   His contention is that the government lied when it said "successfully completed downloads."   If the application had stated, "100% of the files were downloaded," this would be a misstatement of the facts.   However, even that statement would not be material.   The amount of the file downloaded is not relevant to a magistrate judge finding probable cause, so long as at least some child pornography was downloaded.   Moreover, WUKOSON concedes that at least one file was completely downloaded: "The logs show that:…o (Pthc) Lily 10 Yo takes it fully- 8m39S.avi was successfully downloaded."   DE 55:3.   Even,

arguendo, WUKOSON's argument held an ounce of water for this Court to consider his motion to suppress, it would have to fail because the government did in fact obtain a "successfully completed download" of at least one file, as noted by WUKOSON's own expert witness. *Id*. Again, this is neither here nor there: so long as any child pornography is downloaded, probable cause is established.

In *United States v. Colkley*, 899 F.2d 297 (4th Cir. 1990), agents obtained a warrant to arrest the defendant for bank robbery, but did not include in the affidavit the fact that six eyewitnesses had failed to identify the defendant from a photo lineup. After a *Franks* hearing, the district court denied the motion to suppress his post-arrest statements, finding that the affidavit would have established probable cause even if it had included the information about the eyewitnesses. *Id*. at 299. The Fourth Circuit affirmed, but held the defendant had not been entitled to an evidentiary hearing. *Id*. at 299-300.

The *Colkley* court emphasized that "[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *Id*. at 300. Therefore, the court warned against liberal application of *Franks* to cases involving omissions:

> [T]he affirmative inclusion of false information in an affidavit is more likely to present a question of impermissible official conduct than a failure to include a matter that might be construed as exculpatory. This latter situation potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit. The potential for endless rounds of *Frank's* hearings to contest facially sufficient warrants is readily apparent.

*Id*. at 301. "The failure to investigate a matter fully, to 'exhaust every possible lead, interview all potential witnesses, and accumulate overwhelming corroborative evidence' rarely suggests a

knowing or reckless disregard for the truth." *Beard v. City of Northglenn,* 24 F.3d 110, 116 (10th Cir.1994) (quoting *United States v. Dale,* 991 F.2d 819, 844 (D.C.Cir.1993)).   In particular, the *Colkley* court held that a defendant is not entitled to a *Franks* hearing simply because the agent "intentionally" or "knowingly" omitted information from the warrant application, reasoning that all omissions will be intentional in that sense.   *Id*. at 300-01.   Rather, the defendant must proffer facts sufficient to establish that the challenged omissions were "*designed to mislead*, or...*made in reckless disregard of whether they would mislead*, the magistrate." *Id*. at 301.   The Seventh Circuit has similarly emphasized that "a defendant seeking a *Franks* hearing bears a substantial burden to demonstrate probable falsity...He must offer direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reasons for omitting facts in order to prove deliberate falsehood or reckless disregard." *United States v. McNeese*, 901 F.2d 585, 594 (7th Cir. 1990); *United States v. Novaton,* 271 F.3d 968, 987 (11th Cir.2001) (the defendant bears the burden of showing that, "absent those misrepresentations or omissions, probable cause would have been lacking." And citing *Franks,* the Court held '[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.'); *see also United States v. Allen*, 297 F.3d 790, 795 (8th Cir. 2002) ("To prevail on a *Franks* claim based on omissions of fact, [the defendant] must prove . . . that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading.").   "Insignificant and immaterial misrepresentations or omissions will not invalidate a warrant." *United States v. Sims,* 845 F.2d 1564, 1571 (11th Cir. 1988), *cert. denied,* 488 U.S. 957, 109 S.Ct. 395, 102 L.Ed.2d 384 (1988) (quoting *United States v. Ofshe,* 817 F.2d 1508, 1513 (11th Cir. 1987), *cert. denied,* 484 U.S. 963,

108 S.Ct. 451, 98 L.Ed.2d 391 (1987)).

Applying this standard, the *Colkley* court concluded that the district court should have denied the defendant's motion without a hearing:

> [the defendant] made no showing…that…[the affiant] had the requisite intent to mislead. The most that the record here reveals about Moore's failure to include the photospread information is that he did not believe it to be relevant to the probable cause determination. At the very worst, he was merely negligent in disclosing all relevant considerations to the magistrate.   His acts fell far short of the level of flagrant police action *Franks* is designed to prevent, and a hearing under that decision was not required.

899 F.2d at 301.   For the same reason, this Court should deny WUKOSON's motion without a hearing.   The defendant here has not made any offer of proof that would establish that SA Wilson intended to mislead the Federal Magistrate Judge by misstating, intentionally or otherwise, any of the facts in the affidavit.   WUKOSON has offered no direct evidence of SA Wilson's state of mind, nor is an inference of impropriety obvious from the omission.   Absent an intent to mislead, the motion should be denied without a hearing.

In fact, WUKOSON's argument is much weaker than the defendant's in *Colkley*.   There, the omitted information – that eyewitnesses had failed to identify the defendant as the robber – was at least favorable to the defense.   By contrast, WUKOSON has not alleged, even in a conclusory manner, that SA Wilson omitted exculpatory information.   He notes that the affidavit states that on "September 25, 2017, law enforcement successfully completed the download of several video files depicting child pornography that the computer at the Target IP address was making available."   However, this is not a false statement all.   This statement really addresses two points: 1) that the downloaded child pornography successfully completed; and that 2) they

were obtained from the computer at the IP address.

As to the first point, as noted above, the child pornography was successfully downloaded. The fact that the affidavit does not specifically state that only 1 of the 3 files were not 100% downloaded is of no mention.   Had that been specified, probable cause still would have existed. Even if *all three files* had been partially downloaded, and the affidavit said that the child pornography was successfully downloaded, this would not be a misstatement or a mischaracterization of the evidence either.   The statement, "successfully completed the download" is true and accurate.   The FBI did exactly that.   Whether they got 1%, 50% or 100% of the file does not demean a successfully completed download.   The only time this statement would not be true, and thus misleading, would be if the FBI downloaded 0% of the file or if the percentage they downloaded was not in fact child pornography.   Neither of which, in this case is true, and thus the statement is not false or misleading.

As to the second point, that the child pornography was obtained from the computer at the IP address, this is also a true statement.   WUKOSON contends that the three downloaded files listed in the affidavit were not be located on his new silver HP laptop, but were located on the old black HP laptop, which was last accessed in February 2017, and thus somehow this is a false or misleading statement.[1]   There is no doubt, that the only way the FBI could download from a

---

[1] The defendant repeatedly attempts to point out deficiencies in the evidence known to SA Wilson at the time he sought the search warrant, by relying on a subsequent forensic analysis of the hard drive conducted by Richard Connor.   *See, e.g,* DE 55:3-5 ("After the defendant was indicted, the defense hired a forensic expert Richard Connor (who is the subject of a separate expert disclosure today).   Mr. Connor analyzed both the old and new computer, as well as the logs associated with these devices, to reach the conclusions which refute the veracity of the assertions made above.").   Without conceding that any of Mr. Connor's findings are accurate, this ignores the reality that, clearly, SA Wilson did not have the benefit of a full forensic review of the hard drive *before* he obtained the warrant.   Regardless of what a subsequent forensic review might bring to light, in order to warrant a *Franks* hearing, the defendant must show that SA Wilson

computer at WUKOSON's IP address on September 25, 2017, is if a computer user of the IP address had Bit Torrent, was online, and allowed for sharing.   Certainly, WUKOSON is not suggesting that this court invalidate the search warrant because the FBI could not foresee which if any of these files would be on WUKOSON's computer.   In fact, SA Wilson acknowledges that when it comes to Bit Torrent users, "[t]he downloaded file or files, including the torrent file, will remain in that location until moved or *deleted* by the user." DE 55:21 (emphasis added).   Thus, WUKOSON has not met the second *Franks* prong; he has not established that the government's omission was "necessary to the finding of probable cause..."   *Franks,* 438 U.S. at 156.

Numerous courts of appeals, including the Eleventh Circuit, have held that *Franks* motions were properly denied where exculpatory information was omitted from an affidavit filed in support of a warrant application, but the omitted information would not have eliminated probable cause. In *United States v. Ofshe*, an agent applied for a search warrant based solely on a cooperating individual who reported, "he had obtained an unspecified amount of cocaine from an unspecified person in an unspecified manner from an office inside the premises on an unspecified date." *Ofshe,* 817 F.2d at 1510.   The affiant stated that the informant had provided reliable information on 14 prior occasions, but he (the affiant) did not add that the cooperating individual had six prior convictions and was detained on drug trafficking charges at the time of the warrant application. *Id*. at 1510, 1513.   The court found no *Franks* violation, because "the omission of the informant's criminal convictions and incarceration, when considered with all the information contained with the application, does not invalidate the warrant."   *Id*. at 1513.   Similarly, in *United States v.*

---

made deliberate omissions or false statements based on the information known to him at the time he drafted the Affidavit.

*Haimowitz*, 706 F.2d 1549, 1556 (11th Cir. 1983), the affidavit did not set forth an informant's criminal record, but the defendant's *Franks* motion was properly denied, because, even in light of the informant's record, the affidavit established probable cause.

As already discussed, WUKOSON's motion is much weaker than the motions in *Ofshe* or *Haimowitz*.     Unlike those defendants, WUKOSON has not suggested the omission of exculpatory information.    Without such an allegation, he is not entitled to a *Franks* hearing.    *See United States v. Coronel*, 750 F.2d 1482, 1485-86 (11th Cir. 1985) (upholding refusal to hold *Franks* hearing where affidavit described a paid informant as a "concerned citizen" and "legitimate businessman," because affidavit would have established probable cause even without the inaccurate descriptions).

There is nothing to indicate that SA Wilson was being anything but truthful throughout his affidavit.  The Supreme Court has noted that not every fact recited in a warrant affidavit be necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily.  *See Franks*, 438 U.S. at 165.

The defendant has reverted to a hyper-technical rather than a commonsense reading of the affidavit that the Supreme Court and the Eleventh Circuit repeatedly have cautioned against. Further, the Supreme Court has held that there is "a presumption of validity with respect to the affidavit supporting the search warrant."  *Id*. at 154.

As is appropriate for a challenge to an affidavit's demonstration of probable cause, the facts the Court requires to resolve the defendant's motion are contained within the affidavit itself. Those material facts are not in dispute—only their legal consequence. The United States therefore respectfully submits that no evidentiary hearing is necessary to resolve this motion.  *See United*

*States v. Sneed*, 732 F.2d 886, 888 (11th Cir. 1984) ("The concepts of due process do not require that a defendant who fails to make the fundamental allegations in his motion to suppress be afforded a pretrial hearing on his motion. Thus, we hold that, where a defendant in a motion to suppress fails to allege facts that if proved would require the grant of relief, the law does not require that the district court hold a hearing . . . .").

## V.      The Affidavit is Facially Valid

Despite WUKOSON making the contention that the motion to suppress is completely within the confines of a *Franks* motion, the undersigned feels compelled to make an argument that the Affidavit was facially valid as well.   "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location."   *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999).   The United States Supreme Court held,

> after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review.   A magistrate's determination of probable cause should be paid great deference by reviewing courts. . . . [S]o long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more.

*Illinois v. Gates*, 462 U.S. 213, 232, 236 (1983) (internal quotation marks, citations, and alterations omitted); *see also United States v. Miller*, 24 F.3d 1357, 1363 (1994) ("reviewing courts lend substantial deference to an issuing magistrate's probable cause determinations").

First, *Gates* set the standard for probable cause necessary to support the issuance of a search warrant.   There the Court held that "the term 'probable cause,' according to its usual acceptation, means less than evidence which would justify condemnation . . . it imports a seizure made under circumstances which warrant suspicion.'   *Gates*, 462 U.S. at 235.   The court continued, "Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence,

useful in formal trials, have no place in the magistrate's decision . . . it is clear that only the probability, and not a prima facie showing, of criminal activity is the standard for probable cause." *Id*. This requires only the showing of a probability of criminal activity and that evidence of commission of a crime will be located at the place to be searched. Moreover, "courts should not invalidate warrants by interpreting affidavits in a hyper-technical, rather than a common-sense manner." *Id.* at 236. The Supreme Court has also observed that, "doubtful cases should be resolved in favor of upholding the warrant." *See United States v. Ventresca*, 380 U.S. 102, 106 (1965).

Further, the question of what amounts to probable cause is purely a question of law. See *United States v. Allison*, 953 F.2d 1346, 1350 (11th Cir. 1992). The defendant's motion to suppress presents only the legal question as to whether the affidavit set forth adequate probable cause to justify the search warrant. As such, no hearing is necessary. *See United States v. Horne*, 198 Fed. Appx. 865, 870 (11th Cir. Sept. 18, 2006) (holding that district court had not abused its discretion "in not holding evidentiary hearing[] regarding whether the search warrant lacked probable cause" because the determination was question of law).

The affidavit in this case clearly meets the necessary *Gates* standard and should be upheld.

## VI.    "**Good Faith**" **Applies**

There were no knowing and intentional false statements in the affidavit and there was sufficient probable cause to support the issuance of a search warrant. However, even if this court were to conclude otherwise, the evidence seized need not be suppressed as long as this court concludes that the seizing officers acted in good faith.

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court considered the following: "whether the Fourth Amendment exclusionary rule should be modified so as not to bar the use in

the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a neutral and detached magistrate but ultimately found not to be supported by probable cause."   After considering that issue, the court ultimately ruled that, "suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause."   *Id*. at 926.

The Supreme Court has "repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation." *Herring v. United States*, 555 U.S. 135, 141 (2009). Because suppression of evidence imposes significant societal costs, including the possibility of "letting guilty and possibly dangerous defendants go free[,]" suppression should be a court's "'last resort, not [its] first impulse'..." *Id*. at 141 (quoting *Hudson* v. *Michigan*, 547 U.S. 586, 591 (2006)).

In *Leon*, the Supreme Court listed four situations in which suppression would remain an appropriate remedy where reliance on a faulty search warrant would not be objectively reasonable. Echoed by the Eleventh Circuit, the good-faith exception cannot apply if one of the following four circumstances is present:

> (1) the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. . . .
>
> (2) the issuing magistrate wholly abandoned his judicial role . . .
>
> (3) [the] affidavit [was] 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' . . .
>
> (4) [the] warrant [is] so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*Leon*, 468 U.S. at 923 (numbered list added); *see also United States v. Martin*, 297 F.3d 1308,

1313 (11th Cir. 2002).

As to the first condition, the government submits that SA Wilson did not give a deliberately or recklessly false or misleading statement about the downloading of child pornography in this case, and that the affidavit provides probable cause upon which a warrant to search was validly issued. There is nothing proposed by WUKOSON which points to the fact that SA Wilson, with the information he knew from reviewing the downloaded child pornography, misled the Federal Magistrate Judge. The defendant has failed to establish there was any bad faith in the presentation or execution of the search warrant. SA Wilson's affidavit in support of the application for the search warrant reveals that he is a professional, hardworking, and experienced law enforcement officer who takes his work very seriously. As indicated in the affidavit, he been a FBI agent since 2002 and "investigates all manners of violent crimes, including the online sexual exploitation of children." DE 55:16. Further, the affidavit notified the Federal Magistrate Judge that SA Wilson "investigate[s] crimes involving the sexual exploitation of minors including the production, possession, and distribution of child pornography." *Id*. SA Wilson did not give a false or misleading statement to the court or intend to do so. Even if the court were to somehow disagree, it is well established that suppression of evidence is not an appropriate remedy where an officer executes a warrant he reasonably believed to be valid. *See Illinois v. Krull*, 480 U.S. 340, 349-50 (1987).

The Eleventh Circuit has held that, in determining whether the good faith exception applies, the pertinent inquiry is whether a police officer's belief in the existence of probable cause underlying a search warrant was objectively reasonable. *See United States v. Taxacher*, 902 F.2d 867 (11th Cir. 1990). The focus of the analysis should be from the viewpoint of a reasonable officer, not a reasonable jurist. *Id*. Here, SA Wilson had a good faith basis to believe that the

information set forth in the search warrant affidavit – which included detailed information about the distribution and possession of child pornography by the defendant only ten weeks before the warrant was issued – was sufficient to establish probable cause to search.

Moreover, in determining whether an officer acted in good faith when relying upon an invalid warrant, a reviewing court may look outside the four corners of the affidavit. *See generally, Martin*, 297 F.3d 1308.   In this case, as in *Martin*, police did not include in the search warrant affidavit each and every fact known about the investigation, which would have been relevant to the probable cause analysis.   In *Martin*, the Court held that such information elicited at the suppression hearing was relevant and admissible to show that the officers relied on the warrant in good faith.   For instance, the search warrant affidavit prepared by SA Wilson did not set forth that the FBI had, as of September 25, 2017, downloaded or attempted to download child pornography from the same IP address, which was always assigned to WUKOSON on more than ten other days before this, which it had.   If anything this adds to the likelihood that WUKSON would possess images and videos of child pornography.   As in *Martin*, SA Wilson did not intentionally omit facts that would have defeated a finding of probable cause.   On the contrary, the facts omitted in this affidavit would have only further supported the issuance of the warrant. Therefore in the instant case, even if this Court were to find the search warrant affidavit deficient on its face, probable cause was certainly not lacking from the standpoint of a reasonable law enforcement officer when the totality of the information in the possession of police at the time is considered for purposes of analyzing the applicability of the good faith exception.

As to the second condition, WUKOSON has not at all alleged, nor is there anything in the record to suggest, that the Federal Magistrate Judge abandoned his role as a neutral and detached magistrate.

As to the third condition - the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."   In *Martin*, the court of appeals found that "the facts contained in the affidavit leave much to be desired," because the affidavit failed to state the dates of the alleged crimes and presented only minimal evidence that the location to be searched was connected to the crime.   *Id*. at 1315.   Nevertheless, the court refused to suppress the evidence, because the officers' reliance on the warrant was "*not entirely unreasonable*..." *Id*. For the same reason, the Court should not suppress the evidence here.   The affidavit was not "bare bones" or defective in any obvious way.   As already discussed, it set forth clear evidence of possession of child pornography.   Even if this Court were to conclude that the agents should have presented more evidence, the agents' reliance on the Federal Magistrate Judge was not "entirely unreasonable."   Therefore, the Court should deny WUKOSON's motion to suppress.

Finally, as to the fourth condition, no evidence suggests that the warrant itself was facially deficient: the things to seize and the place to be searched were correct and have not been challenged.

It is clear from the facts of this case, that none of the four circumstances described in *Leon* and *Martin* apply to the search warrant in the present case.   In fact, the defendant's six-page motion fails to include any analysis as to why the good-faith exception does not apply.   The defendant has done nothing to demonstrate that SA Wilson had any reason to believe that he was not executing a valid search warrant.   Nor has the defendant shown that the Federal Magistrate Judge who issued the warrant was not neutral in considering the evidence before him.   As such, this court should not suppress any evidence obtained as a result of the search of the defendant's residence.   The Supreme Court has noted that the cost of a reviewing court second-guessing the execution of a search warrant is too high.   *Leon*, 468 U.S. 897.

WHEREFORE, the government respectfully opposes WUKOSON's motions to suppress and requests this Court to deny the motion without the necessity of a hearing.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
ACTING UNITED STATES ATTORNEY


By:    *s/ Gregory Schiller*
       Assistant United States Attorney
       FL Bar #: 0648477
       500 S. Australian Avenue, Suite 400
       West Palm Beach, Florida 33401
       Tel: (561) 209-1045
       Gregory.schiller@usdoj.gov


**CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2019 I electronically filed the foregoing with the Clerk of the Court.

*s/ Gregory Schiller*
Assistant United States Attorney