```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                      CASE NO. 18-80166-CR-DMM


UNITED STATES OF AMERICA,

            Plaintiff,                  MARCH 22, 2019
        vs.
                                   WEST PALM BEACH, FLORIDA
NICHOLAS WUKOSON,

            Defendant.                  PAGES 1 - 23
_____/


             TRANSCRIPT OF CHANGE OF PLEA HEARING
         BEFORE THE HONORABLE DONALD M. MIDDLEBROOKS
                UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE GOVERNMENT:   GREGORY SCHILLER, AUSA
                      Office of U.S. Attorney
                      400 Australian Avenue
                      West Palm Beach, FL  3401


FOR THE DEFENDANT:    MICHAEL B. COHEN, ESQ.
                      Office of Michael B. Cohen
                      6400 N. Andrews Avenue, Ste 505
                      Fort Lauderdale, FL  33309

                      ALAN SCHLESINGER, ESQ.
                      Law Office of Alan Schlesinger
                      31 Netteeton Drive
                      Woodbridge, CT  06525




REPORTED BY:          DIANE MILLER, RMR, CRR, CRC
                      Official Court Reporter
                      701 Clematis Street
                      West Palm Beach, Florida  33401
                      561-514-3728
                      diane_miller@flsd.uscourts.gov
```

Friday, March 22, 2019.

```
 1                    P-R-O-C-E-E-D-I-N-G-S

 2            THE COURT:  Good morning; please be seated.

 3            This is the case of the United States versus versus

 4    Nicholas Wukoson, case number is 18-80166.

 5            Could we have appearances?

 6            MR. SCHILLER:  Good morning, Your Honor; Greg

 7    Schiller on behalf of the United States; with me is Special

 8    Agent Scott Wilson from the Federal Bureau of Investigation.

 9            Your Honor, I have copies of the plea and proffer

10    signed; may I approach?

11            THE COURT:  All right.

12            Thank you.

13            MR. COHEN:  Michael R. Cohen on behalf of Nicholas

14    Wukoson, who is before the Court, along with Alan Schlesinger,

15    my co-counsel.

16            THE COURT:  Good morning.

17            Okay, I have reviewed the written plea agreement and

18    the factual proffer.

19            Mr. Schiller, let me ask you.  What is your thinking

20    behind the agreement?  I mean, I generally follow

21    recommendations and plea agreements.  This one has an unusual

22    recommendation.

23            MR. SCHILLER:  It does, Judge.  The facts of this

24    case, had this case gone to trial on Monday, as it was

25    currently set, was going to require the Government to put forth
```

Friday, March 22, 2019.

```
 1   the testimony in the form of witness of the defendant's son.
 2   He is now 14 years old.  He is young, and it is the
 3   Government's position that this plea will alleviate that child
 4   from having to testify and having to go through the hardship of
 5   that.  I have spoken with him with his mother, who is in the
 6   courtroom, and everyone is in agreement that this plea would
 7   benefit the child substantially.
 8           We know the risks of going to trial, as does the
 9   Defense, but we think, at the very least, what this does is it
10   will make the defendant a registered sex offender, exposes him
11   to significant prison time; but for the Government's case, when
12   we are thinking about the long-term effects of any case, the
13   effect of having the 13- -- now just turned 14 in November, but
14   the 14-year-old boy on the stand to have to testify against his
15   father and how that could affect him, whoever is in the
16   courtroom to watch him, we think would be detrimental to him.
17           He is willing to testify and willing to cooperate,
18   that's not a problem.  But the Government has multiple motives
19   in this case for prosecuting -- we have the motive for
20   prosecuting this case because of the crime, but resolving the
21   case we feel, among other things, is in the best interests of
22   that child.
23           THE COURT:  All right.
24           And you agree with that, I presume, Mr. Cohen?
25           MR. COHEN:  I do, Your Honor.
```

Friday, March 22, 2019.

```
 1              We both worked very hard in coming to a conclusion in
 2    this case.  We think it is in the interests of everyone that it
 3    be resolved this way, and therefore we came to the agreement
 4    that we came to.
 5              MR. SCHILLER:  Just so the Court is aware, I have
 6    discussed this with multiple levels within my office, and it is
 7    agreed to based upon what I just relayed to the Court.
 8              THE COURT:  All right.
 9              Is your client ready to proceed?
10              MR. COHEN:  He is, Your Honor.
11              THE COURT:  Please administer the oath to
12    Mr. Wukoson.
13              MR. COHEN:  If we could have him affirm rather than
14    swear, it is a matter of religious belief.
15              THE COURT:  All right.
16              THE COURTROOM DEPUTY:  Raise your right hand.
17                NICHOLAS WUKOSON, DEFENDANT, AFFIRMED.
18              THE COURT:  Thank you, sir; please be seated.
19                              EXAMINATION
20    BY THE COURT:
21    Q.  We have done this once before, so basically you are now
22    under oath.  If you answer falsely to any of my questions, your
23    answer could later be used against you in another prosecution
24    for perjury or for making a false statement; do you understand?
25    A.  Yes, Your Honor.
```

Friday, March 22, 2019.

```
 1   Q.   Okay.  Tell me your education.

 2   A.   Bachelor's degree, business administration.

 3   Q.   All right.  And have you ever been treated for any mental

 4   illness?

 5   A.   No, sir.

 6   Q.   Have you been treated for addiction to narcotics or

 7   alcohol?

 8   A.   No, sir.

 9   Q.   Are you currently under the influence of any drug or

10   alcohol?

11   A.   No, sir.

12   Q.   Are you taking any medication?

13   A.   Just blood pressure.

14   Q.   Have you reviewed the superceding indictment, the charges

15   filed against you in this case, and have you discussed those

16   charges with your lawyer?

17   A.   Yes, sir.

18   Q.   Are you satisfied with the representation your lawyers have

19   provided to you?

20   A.   Yes, sir, I am.

21   Q.   I have been given a copy of a plea agreement between

22   yourself and the Government.  Let me first ask you to confirm,

23   this is your signature on the agreement.

24   A.   Yes, sir.

25   Q.   Before signing it, did you review it and discuss it with
```

1  your lawyer?

2  A.  Yes, sir.

3  Q.  Do you believe you understand it?

4  A.  Yes, sir, I do.

5  Q.  All right.  I'm going to review aspects of it with you, and

6  if you have any question about any part of it, please tell me.

7          In paragraph one, you are agreeing to plead guilty to

8  counts one through seven of the superseding indictment.  Counts

9  one through six charge you with possession of child pornography

10  involving a prepubescent minor or a minor who has not attained

11  the age of 12 in violation of federal law.  Count seven charges

12  you with witness tampering, again in violation of federal law.

13  Do you understand you are agreeing to plead guilty to those

14  charges?

15  A.  Yes, sir.

16  Q.  Now, the sentence in this case will be imposed after

17  consideration of the Federal Sentencing Guidelines.  I'm

18  obligated to calculate a sentencing guideline range under the

19  guidelines.  Usually a sentence falls within that range.  I

20  have some discretion to vary from the guidelines up or down,

21  but I have to take them into account, as well as other laws

22  passed by Congress related to sentencing.

23          The Court has legal authority to sentence you up to

24  the maximum authorized by law for the offense to which you are

25  pleading guilty, and you won't be able to withdraw your plea as

1  a result of the sentence imposed, do you understand?

2  A.  Yes, sir, I do.

3  Q.  The possible penalties are in paragraph four of the

4  agreement which indicates that with respect to counts one

5  through six, you could be sentenced to a term of imprisonment

6  of up to 20 years.  Imprisonment would be followed by a term of

7  supervised release of at least five years.  It could extend as

8  much as life.

9         As to count seven, the Court could impose a maximum

10  term of 20 years followed by a supervised release of up to five

11  years.  In addition to imprisonment and supervised release, a

12  fine of up to $250,000 could be ordered, and there will be a

13  special assessment of $100 payable at sentencing; do you

14  understand?

15  A.  Yes, sir, I do.

16  Q.  And also I'm, I think under this crime, obliged to order

17  restitution to any identified victims, and the amount of

18  restitution will be determined no later than 90 days after the

19  sentencing hearing.

20         Paragraph five contains an unusual provision,

21  particularly since I usually follow plea agreements.  The

22  Government has agreed to recommend that in terms of

23  imprisonment, you be sentenced to no more than four years

24  imprisonment.  The Government won't be required to make that

25  recommendation, however, if you fail to make a full disclosure

```
 1  to the Probation Office of the circumstances surrounding the
 2  offense.  If you are found to have misrepresented facts to the
 3  Government before entering into this agreement or if you commit
 4  any misconduct after entering into the agreement; do you
 5  understand?
 6  A.  Yes, sir, I do.
 7  Q.  In paragraph six, it points out that in addition to the
 8  normal assessment of $100 a count, that the Court shall assess
 9  the amount of $5,000 --
10           THE COURT:  Is that per count or is that total?
11           MR. SCHILLER:  Total, Judge.
12  BY THE COURT:
13  Q.  So it will be -- seven times a hundred -- $700 plus 5,000.
14           MR. SCHILLER:  That's correct.
15           Just so the Court is aware, if there is a restitution
16  order that would be paid before the $5,000 special assessment,
17  but that's all monetary issues not conditional on the plea.
18  BY THE COURT:
19  Q.  So basically there is a special assessment of $700 plus
20  5,000, $5,700, do you understand?
21  A.  Yes, sir.
22  Q.  You are also agreeing in paragraph seven to forfeit your
23  right, title, and interest in two laptops.
24           In paragraph eight -- well, you are agreeing to that
25  property represented the -- I guess those laptops had visual
```

Friday, March 22, 2019.

1  depictions of a minor engaged in sexually explicit conduct, and

2  you are agreeing to cooperate with the Government in doing that

3  restitution.

4         Paragraph 15 is a very important part of your plea

5  agreement because, under federal law you have a right to appeal

6  the sentence imposed in this case; however, as part of your

7  plea agreement, you are giving up your rights to appeal the

8  sentence in this case unless the sentence were to exceed the

9  maximum permitted by statute or a result of the Court declining

10  to follow your joint sentencing recommendation, I guess the

11  recommendation of four years.

12         So as long as you were sentenced pursuant to that

13  recommendation, you are giving up your rights to appeal the

14  sentence, do you understand?

15  A.  Yes, sir, I am.

16  Q.  Have you talked about that with your lawyer and are you

17  satisfied with your decision in this respect?

18  A.  Yes, sir, I am.

19  Q.  In paragraph 16, it indicates that you understand you will

20  be required to register as a sex offender upon release from

21  imprisonment, as a condition of supervised release, and you

22  will be subject to federal and state sex offender registration

23  requirements.  Those requirements may apply throughout your

24  life; do you understand that?

25  A.  Yes, sir, I do.

```
 1   Q.  Okay.  We have reviewed the written plea agreement --
 2            MR. SCHILLER:  If I may, there was one other
 3   condition I would like to make sure is on the record.
 4            THE COURT:  Which one?
 5            MR. SCHILLER:  Paragraph 11 that talks about
 6   restitution, the defendant is agreeing to -- and the last
 7   sentence is the most telling -- pay $3,000 to each identified
 8   and requesting victim of child pornography.  We are in the
 9   process of identifying those individuals, producing videos from
10   the defendant's computer.  We will provide that information to
11   the Defense; and then this way, we can alleviate a restitution
12   hearing.  We know the amount, we will just come up with the
13   number of victims and then submit an agreed order hopefully at
14   sentencing.
15            MR. COHEN:  I know, Judge, some of the ways that
16   district courts handle that is set a hearing date; but most of
17   the time, that's canceled, once the stipulation is entered
18   into.  So I would assume Your Honor would probably do that.
19            THE COURT:  Okay.  So you all are going to try to
20   agree on the number of people, and once you do that, it's
21   times --
22            MR. SCHILLER:  That's correct.
23            THE COURT:  -- times 3,000?
24   BY THE COURT:
25   Q.  Mr. Wukoson, you understand that?  You are agreeing to pay
```

Friday, March 22, 2019.

1  restitution, the Government is going to identify the number of

2  victims and you are going to pay $3,000 per victim; do you

3  understand?

4  A.  Yes.

5          MR. SCHILLER:  Judge, just so we are clear, if we

6  identify that is not who he is going to pay, if they are also

7  then seeking some restitution, there are some unidentified

8  victims that are seeking it.  The ones that are seeking it are

9  the ones he will pay to.  We will provide that information to

10 the Defense.

11         THE COURT:  All right.

12         MR. SCHILLER:  Thank you, Judge.

13 BY THE COURT:

14 Q.  Outside of this written agreement, has the Government made

15 any promises to you in connection with your decision to plead

16 guilty?

17 A.  No, sir.

18 Q.  Are you pleading guilty your own free will because you are

19 guilty?

20 A.  Yes, sir.

21 Q.  Do you understand you have a right to plead not guilty?  If

22 you plead not guilty, you have a right to a trial by jury.  The

23 Government would have to prove your guilt beyond a reasonable

24 doubt.  You would have the right to the assistance of counsel.

25 Your lawyer could cross-examine the witnesses called by the

1  Government, present witnesses on your behalf.  You could either

2  testify or choose not to testify; and if you chose not to

3  testify, that fact couldn't be used against you in the trial.

4  Do you understand that you have those rights?

5  A.  Yes, sir, I do.

6  Q.  By pleading guilty, you are giving up those rights and

7  there will be no trial; do you understand?

8  A.  Yes, sir, I do.

9  Q.  This crime is a felony.  If your plea is accepted, you will

10  be adjudged guilty of a felony and may lose valuable civil

11  rights such as the right to vote, the right to hold office, the

12  right to own a firearm; do you understand?

13  A.  Yes, sir.

14  Q.  There is -- I have been handed a written factual proffer in

15  this case.  Let me ask you to confirm, is this your signature

16  also on the written factual proffer?

17  A.  Yes, sir.

18  Q.  And you agree with these facts?

19  A.  Yes, sir.

20  Q.  All right.  Despite its existence, I'm going to ask the

21  Prosecutor to briefly describe what he would have proven at

22  trial, had the case gone to trial.  Please listen carefully;

23  when he finishes, I will ask you whether you did what the

24  Government says you did.

25         Mr. Schiller, you don't have to read it all, unless

1  you choose to?

2         MR. SCHILLER:  Judge, I think it would be easier if I

3  did, but it will be a few minutes of reading, if the Court

4  would indulge me.

5         THE COURT:  All right.

6         MR. SCHILLER:  Had this case gone to trial, the

7  Government would have proven the following facts, beyond a

8  reasonable doubt.  Between June 24th and November 26, 2017, the

9  FBI, while working in an undercover capacity, utilized a Bit

10  Torrent law enforcement network client program to acquire

11  downloads of actual child pornography from the IP address that

12  would result to the defendant.

13         On September 25th, 2017, the agents successfully

14  completed the download of image and video files depicting child

15  pornography from the defendant's IP address.  FBI agents

16  reviewed the images and videos that depicted children under the

17  age of 18 engaged in sexual acts and/or consistent with child

18  pornography.  I won't go into detail, but the proffer lists

19  three specific videos that were downloaded from the defendant's

20  computer and his IP address to the FBI computer.  The titles of

21  those involve terms that are indicative with child pornography,

22  and the images and videos themselves are as well.

23         Successful downloads of images and videos of child

24  pornography also occurred on August 14th, August 15th, and

25  November 14th, 2017, from the computer using the IP address of

1  the defendant.  Results from the subpoena resolved that IP

2  address to the defendant's residence in Jupiter.

3        On December 4th, agents executed a search warrant at

4  the defendant's residence in Jupiter, Florida.  Mr. Wukoson was

5  present.  He was -- the agents found a silver laptop, serial

6  number 5CD6510165.  Post Miranda, the defendant admitted this

7  to be his computer.

8        While interviewing Wukoson, the agents further under

9  covered a black lop to computer with serial number 5CD51334FQ

10 in a closet that appeared to be broken.  When confronted about

11 this, which Mr. Wukoson did not originally disclose was his, he

12 later advised that it was his and it broke sometime earlier.

13       On the silver laptop, forensic examination uncovered

14 search terms for "pretty girls ages 12 to 13," "nude teen

15 triple X" and "real teenage girls."  There were over a thousand

16 images of what are known as LS models.  They are pictures of

17 girls dollared up with makeup and clothing to look older, but

18 they are, in fact, minors.  More than 300 of those were posed

19 and found on the defendant's computer.  It was also well over

20 100 videos of suspected child pornography located in the

21 recycle bin; however, due to the fact that they wee deleted,

22 they all could be confirmed.  However, there were several that

23 were available to the agents to uncover, and they did show

24 child pornography.

25       The agents uncovered also 20 torrent files with the

1    names of child pornography indicative of use of Bit Torrent on

2    his computer and records of the uTorrent client which is used

3    to get on the Bit Torrent network were found on the computer as

4    well.  But the client and access to this was deleted, except

5    for records on the computer which showed, in fact, that the

6    computer had visited those sites.

7            On the black computer, again child pornography was

8    located with search terms like "real teenage girls dark web",

9    real teenage girls 13 to 15," and "young girls shorts oops."

10   In the computer's recycling bin, agents also recovered child

11   pornography as far as back as December 2015.

12           Both of these devices were manufactured outside of

13   the State of Florida; and by entering this plea, the defendant

14   agrees that no other person was responsible for downloading the

15   child pornography in question on the aforementioned devices

16   other than the defendant.

17           Subsequent to the search warrant on December 4th of

18   the defendant's residence, the defendant spoke with his then

19   13-year-old son at a movie theater, on December 7th, 2017.

20   There, the defendant advised the child what to tell the FBI if

21   interviewed about the aforementioned child pornography,

22   including that the child should say that he used Bit Torrent

23   and that the child pornography was from something called "LS

24   Magazine."  The defendant convinced the child to take

25   responsibility for the child pornography saying that the child

Friday, March 22, 2019.

1  would only get, "a slap on the wrist."  The defendant further

2  told the child, "If you do this, you will be saving me."

3       Later that same evening, when the defendant and his

4  son slept over at the defendant's friend house, the defendant

5  encouraged his son to take responsibility for the child

6  pornography.  The child called his mother and spoke to the

7  defendant's friend at the residence saying, "It could have been

8  me" regarding the child pornography.  The child then remitted

9  the same when formally interviewed a week later, while this

10 investigation was pending.  Subsequent to the statement, the

11 child admitted that he made these statements during the

12 interview at the direction of his father.

13       By agreeing to plead guilty to counts one through

14 six, the defendant admits the following:  That he possessed

15 child pornography on the dates indicated in the superseding

16 indictment; that the defendant knowingly possessed one or more

17 matters which contained any visual depiction of a minor engaged

18 sexually explicit conduct; that the items of child pornography

19 had been transported in interstate and foreign commerce

20 including by computer.

21       The production of the visual depictions involved the

22 use of a minor engaging in sexual explicit conduct and the

23 visual depiction was of such conduct, and the defendant knew

24 that the visual depiction involved the use of a minor engaging

25 in sexually explicit conduct.

Friday, March 22, 2019.

1          Also by agreeing to these facts, the defendant agrees

2   that the following elements of witness tampering, count seven,

3   would have been proven beyond a reasonable doubt:  One the

4   defendant attempted to or did obstruct, influence, or impede an

5   official proceeding, and the defendant acting corruptly.

6          Had this case gone to trial, Judge, those are all of

7   the facts and elements the Government would have proven beyond

8   a reasonable doubt.

9          Thank you.

10         THE COURT:  All right, thank you.

11  BY THE COURT:

12  Q.  Mr. Wukoson, you heard the prosecutor describe what he

13  would have proven at trial; did you do those things?

14  A.  Yes, sir.

15  Q.  This was your child pornography?

16  A.  Yes, sir.

17  Q.  It was not your son's?

18  A.  No, sir.

19  Q.  How do you plead to the charges, guilty or not guilty?

20  A.  Guilty, Your Honor.

21         THE COURT:  Anything further, Mr. Schiller, you

22  believe I should cover?

23         MR. SCHILLER:  No, Your Honor; I think that covers

24  everything.

25         THE COURT:  Mr. Cohen?

Friday, March 22, 2019.

```
 1                 MR. COHEN:  No, sir.
 2                 THE COURT:  It is then the finding the Court in the
 3      case of United States versus Nicholas Wukoson that the
 4      defendant is fully competent and capable of entering an
 5      informed plea, that he is aware of nature of the charges and
 6      the consequences of the plea, and that the plea of guilty is a
 7      knowing and voluntary plea supported by an independent basis in
 8      fact containing each of the essential elements of the offense.
 9      The offense is -- the plea is therefore accepted and the
10      defendant is adjudged guilty of these offenses.
11                 It is also the finding of the Court that the
12      defendant has discussed with Counsel the appellate waiver
13      contained within the plea agreement and that waiver is also
14      knowing and voluntary.
15                 We already have a PSI.  Do you want have an
16      accelerated sentencing?  We don't need another 70 days, do we?
17                 MR. SCHILLER:  I don't think that we do, Judge.
18                 MR. COHEN:  The only difference, Judge, would be that
19      since I had been new counsel since that had been done and there
20      may be other things that we want to submit to the Court,
21      perhaps a psychological workup, it might have an intermediate
22      period of time.
23                 THE COURT:  What, 30 days you think?
24                 MR. COHEN:  Yeah, something like that.
25                 MR. SCHILLER:  Judge, the PSR has to be slightly
```

Friday, March 22, 2019.

```
 1  amended because of the charges he is pleading guilty to and the
 2  additional facts.
 3          THE COURT:  All right, let's have a -- I mean, let's
 4  have a sentencing date.
 5          THE COURTROOM DEPUTY:  April 23rd.
 6          THE COURT:  April 23rd.
 7          THE COURTROOM DEPUTY:  At 10:00 a.m.
 8          THE COURT:  Does that time work?
 9          MR. COHEN:  Judge, may I have a moment to consult my
10  calendar?
11          THE COURT:  Sure.
12          MR. SCHILLER:  Judge, what time would that be?
13          THE COURTROOM DEPUTY:  10:00 a.m.
14          MR. SCHILLER:  It is Passover week, but it won't
15  affect my schedule.
16          THE COURT:  All right.  That day is -- we can change
17  it, if it is not a problem with you.
18          MR. SCHILLER:  It is not a holiday where I can't work
19  on that particular day.
20          MR. COHEN:  We can't do it, Judge.  I have a conflict
21  on a bench trial in state court that day.  If it could be done
22  just a little bit later than that, I would appreciate that.
23          THE COURT:  You mean days or hours?
24          MR. COHEN:  Maybe a week.  The only other thing I'm
25  looking at, Judge, is Thursday May 2nd, I'm leaving for
```

```
 1  Tallahassee.  My daughter is graduating from Florida State
 2  University, so with those things in mind, that's what I would
 3  ask for.
 4          THE COURTROOM DEPUTY:  We have April 25th, 26, or
 5  29th, or April 30th.
 6          MR. COHEN:  Either the 29th or the 30th.
 7          THE COURT:  Those work for you, Mr. Schiller?
 8          MR. SCHILLER:  The 29th would be preferable.
 9          THE COURT:  The 29th then.
10          At 10:00 o'clock?
11          THE COURTROOM DEPUTY:  We can do 10:00 a.m.
12          THE COURT:  Okay.
13          You know, I'm not going to criticize the Government
14  on the four-year -- you made your decision for the reasons.  I
15  mean the guidelines were, in the PSI for one count, were 97 to
16  something months, so it is going to be hard, Mr. Cohen, to get
17  below the four years --
18          MR. COHEN:  I understand, Judge.
19          THE COURT:  -- as you understand.
20          MR. COHEN:  I just want an opportunity to apply the
21  factors, 3553, and we understand the Court's general --
22          The court:  Yeah, I will follow the -- the showing --
23  or the recommendation, although I -- an unusual set of
24  circumstances led to it, I'm sure.
25          MR. SCHILLER:  They absolutely did, Judge.
```

Friday, March 22, 2019.

```
 1              MR. COHEN:  Judge, could we approach sidebar for just
 2    a minute, Counsel and I?
 3              THE COURT:  I don't do sidebars in criminal cases.
 4    What is the issue?
 5              MR. COHEN:  The issue is sealing.  There may be an
 6    outstanding sealing motion I filed.
 7              THE COURT:  I denied it without prejudice.  If you
 8    want to put initials in.  I mean --
 9              MR. COHEN:  That's --
10              THE COURT:  -- I appreciate that, but the problem is,
11    criminal proceedings, particularly, are public events.
12              MR. COHEN:  Understood.
13              THE COURT:  But if you want to replace it with
14    initials --
15              MR. COHEN:  That's exactly right.
16              THE COURT:  -- of the child, I think that would make
17    sense.
18              MR. COHEN:  That's exactly what I wanted to.
19              By way of explanation, I was in New York City, when I
20    was retained -- my brother-in-law who is dying -- and a lot of
21    that was dictated, as Mr. Schiller knows, over a phone.
22              THE COURT:  Okay.  Well, if you will just submit one
23    with initials, I will --
24              MR. COHEN:  Yes, thank you.
25              THE COURT:  -- allow it to be replaced.
```

Friday, March 22, 2019.

1    MR. SCHILLER:  And, Judge, just because we are

2  dealing with that issue, the reason we didn't do anything with

3  it at the time was because I knew it was accidental.  The more

4  recent filing that had the boy's name.  As soon as we saw, we

5  immediately contacted Defense Counsel.  That's why that one was

6  sealed and a new one filed.

7    THE COURT:  All right.  Given all of the

8  circumstances that led to this, I'm going to order the

9  defendant remanded.

10    MR. COHEN:  Judge, the Government had a

11  recommendation that he be able to remain out.  He has no

12  opportunity to make any changes in his circumstances, at this

13  point.  He didn't make any arrangements to take care of, you

14  know, personal matters.

15    THE COURT:  Well, he has had plenty of opportunity.

16  I would not have allowed that first plea to be vacated but for

17  the Government's motion.  I mean, he told me when he pled

18  guilty the first time, he did it; and then to come up with

19  this, you know, "it was my son's fault," I felt was -- it was

20  pretty offensive, I guess, is my -- is a brief way of saying

21  how I felt about it.

22    MR. COHEN:  I understand that, Judge.

23    What I would ask the Court to do, the Government was

24  going to make a recommendation that he be able to remain out

25  until the sentencing, is if the Court feels he must be

Friday, March 22, 2019.

1   remanded, that you give him some sort period of time to just

2   take care of his personal matters.

3           THE COURT:  As you know, Billy D, Dimitrouleas

4   remands everybody.  Here, I don't see that there has been much

5   acceptance.  This is a last minute, you know, the Friday before

6   trial was to start.  As I say, I'm not going to criticize

7   either side for what happened, but I do think the actions that

8   were taken by the defendant were really very offensive from

9   start to finish in this case.  So I'm going to order remand.

10          Thank you.

11     (PROCEEDINGS ADJOURNED AT 11:29 a.m.)

12              **C-E-R-T-I-F-I-C-A-T-E**

13          I hereby certify that the foregoing is

14     an accurate transcription and proceedings in the

15     above-entitled matter.

16

    *5/2/2019*                      */s/DIANE MILLER*
17   DATE                      DIANE MILLER, RMR, CRR, CRC
                               Official Court Reporter
18                             United States District Court
                               701 Clematis Street, Room 259
19                             West Palm Beach, FL  33401
                               561-514-3728
20

21

22

23

24

25

                   Friday, March 22, 2019.